UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CR 09-933(A)-CAS | Date | September 17, 2012 |

Present: The Honorable    CHRISTINA A. SNYDER

Interpreter   N/A

| Catherine Jeang | Not Present | Patricia Donahue, Not Present<br>Karen Meyer, Not Present<br>David Herzog, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder,*<br>*Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Boyajian: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| RONALD GERARD BOYAJIAN | NOT | X | | RICHARD STEINGARD<br>SEEMA AHMAD | NOT<br>NOT | | X<br>X |

**(IN CHAMBERS): DEFENDANT'S MOTION TO DISMISS COUNT THREE ON EQUAL PROTECTION GROUNDS** (filed 5/23/2012)

**DEFENDANT'S MOTION FOR SEVERANCE OF COUNTS ONE AND TWO** (filed 5/29/2012)

**DEFENDANT'S RENEWED MOTION *IN LIMINE* TO EXCLUDE RULE 413 AND 414 EVIDENCE** (filed 5/29/2012)

**GOVERNMENT'S MOTION *IN LIMINE* FOR INTRODUCTION OF**
Proceedings:   **RULE 404(b) EVIDENCE** (filed 5/30/2012)

## I.    INTRODUCTION

Defendant Ronald Gerard Boyajian is charged with one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b), one count of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places in violation of 18 U.S.C. § 2423 (c), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A. See First Superseding Indictment, Dec. 3, 2010. The charges arise from defendant's alleged illicit sexual acts with a minor girl in Cambodia, identified as S.L.

Further background and facts are known to the parties and set forth in the Court's orders dated November 3, 2011, and July 6, 2011. Dkt. Nos. 127, 111.

## II.   DEFENDANT'S MOTIONS

### A.   Renewed Motion *in Limine* to Exclude Evidence of Defendant's Prior Sexual Assault Convictions

Federal Rule of Evidence 413 provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). "Sexual assault" is defined, in part, as "any conduct prohibited by 18 U.S.C. chapter 109A;" or "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus"; or "contact, without consent, between the defendant's genitals or anus and any part of another person's body." Fed. R. Evid. 413(d)(1)–(3).

The Court previously ruled that certain evidence was admissible pursuant to Rules 413 and 414. See Dkt. No. 111. Specifically, the Court concluded that documentary evidence of defendant's prior convictions in California was admissible, but instructed the government that live testimony was not permitted because it would be unduly time-consuming.[1] Id. The Court further ruled that live testimony from three Cambodian minors, K.L., TaP, and TyP, was separately admissible under the rules. Id. at 5.

Defendant's renewed motion *in limine* seeks to exclude evidence of any of defendant's prior California convictions on the ground that the sexual contact between defendant and the two 16-year-old victims was consensual in nature and therefore is not encompassed by Rule 413, which allows for the admissibility of evidence of prior sexual conduct only if it was "without consent."[2] Fed. R. Evid. 413(d); Mot. at 1–2.[3] Specifically, defendant argues that "an

---

[1]Defendant was convicted of 22 counts of engaging in unlawful sexual intercourse with a minor in violation of Cal. Penal Code § 261.5. By way of example, Count 4 charged defendant as follows: "On or about and between January 15, 1992 through January 31, 1992, RONALD GERALD BOYAJIAN, in violation of Section 261.5 of Penal Code (UNLAWFUL SEXUAL INTERCOURSE), a FELONY, did willfully and unlawfully have and accomplish an act of sexual intercourse with a female person, to wit, [K.S.], not his wife, who was then and there under the age of eighteen years, to wit [16] years." Opp'n, Exh. A at 2.

[2]Rule 414 applies to victims "below the age of 14." Fed. R. Evid. 414(d)(1). Defendant's prior California Penal Code convictions involved two 16-year-old victims and

## CRIMINAL MINUTES - GENERAL

individual under the age of 18 can legally consent to sex" in California such that consensual sex with a minor "might in some cases be a distinct and less serious crime than rape." Mot. at 4 (quoting <u>People v. Tobias</u>, 25 Cal.4th 327, 333–34 (2001)). According to defendant, before evidence of defendant's prior convictions is admitted, the government "must [therefore] establish either that the prior conviction necessarily involved nonconsensual conduct or that the underlying facts establish nonconcsensual conduct." <u>Id.</u> at 5. Defendant contends that the factual evidence underlying the convictions "demonstrates that the specific sexual relations were, in fact, consensual," and thus not admissible under Rule 413. <u>Id.</u> at 6–9.

In opposition, the government asserts four broad reasons why defendant's argument should be rejected: first, because evidence of defendant's prior sexual assaults "continues to be admissible under Rule 413, regardless of the California authority defendant cites" (relying on <u>United States v. Rogers</u>, 587 F.3d 816, 820 (7th Cir. 2009)); second, because there is evidence that on four occasions defendant used force when causing the two 16-year-olds to have sex with him, which qualifies as a "crime under federal law or under state law" and therefore admissible under Rule 413 (<u>see id.</u> (quoting Fed. R. Evid. 413(d))); third, because the facts underlying defendant's prior convictions demonstrate that "on multiple occasions, defendant had sex with [the 16-year-old minors] without their <u>actual</u> consent"; and finally, because the evidence is independently admissible pursuant to Rule 404(b). Opp'n at 1–4 (emphasis in original).[4]

---

therefore is governed by Rule 413.

[3]Defendant does not appear to challenge the Court's conclusion that Cambodian minors K.L., TaP, and TyP shall be permitted to testify about separate sexual assaults unrelated to the California charges. Accordingly, the Court declines to revisit that portion of its prior ruling. <u>See</u> Dkt. No. 111.

[4]The government makes clear that it will seek to introduce different evidence depending on which theory of admissibility, if any, the Court relies. Specifically, if the Court reads the Seventh Circuit decision in <u>Rogers</u> as standing for the proposition that minors can never consent to sex with an adult, the government intends to introduce certified conviction documents for all 22 counts of which defendant was convicted. Opp'n at 10. Alternatively, if the Court concludes that defendant "used force when having sex with K.S. or S.C., in violation of 18 U.S.C. § 2241," the government will seek to admit the certified conviction documents related to Count 4, as well as live testimony of K.S. and S.C., about four specific prior instances of sexual misconduct. <u>Id.</u> Lastly, if the Court concludes that the minors did not consent to certain sexual acts committed against them, the government will seek to introduce only the certified conviction documents of Count 4 and Count 13. <u>Id.</u> at 10–11.

## 1. Rule 413 and the Meaning of "Consent"

In <u>United States v. Rogers</u>, the defendant was charged with attempting to entice a minor to engage in sexual activity and using the Internet to attempt to transfer obscene material to a minor in violation of 18 U.S.C. § 2442(b) and § 1470. <u>Rogers</u>, 587 F.3d at 818. At trial, the government moved to admit evidence of defendant's prior conviction for solicitation of a minor and defendant's prior conduct in engaging in sexually explicit Internet conversations with a 14-year-old pursuant to Rule 413. <u>Id.</u> at 819. The district court denied the government's motion, reasoning that the conduct "failed to qualify as an 'offense of sexual assault' under Rule 413 because the Wisconsin minor willingly participated in the [Internet] conversations." <u>Id.</u> The Seventh Circuit reversed: "We cannot agree with the district court's interpretation of the word 'consent.' Rule 413 uses that word without qualifying it as actual or literal, and nothing suggests that Congress meant 'consent' to mean anything other than its general legal definition. <u>Id.</u> at 820. Accordingly, whether a minor victim literally consents to sexual contact with an adult is not relevant for purposes of Rule 413 admissibility, because "[m]inors lack the capacity to consent, and so sexual contact with a minor is always 'without consent.'" <u>Id.</u>

While <u>Rogers</u> is persuasive authority regarding the federal definition of "consent" and the question of admissibility of evidence under Rule 413, "[f]ederal law sets the age of consent at 16." <u>See, e.g.</u>, <u>United States v. Batton</u>, 602 F.3d 1191, 1197 n.2 (10th Cir. 2010); 18 U.S.C. § 2243(a) (federal law is violated when a defendant knowingly engages in "a sexual act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging"). Because the victims of defendant's prior crimes were 16 years old at the time those crimes were committed, the question of whether the girls actually consented is still relevant under either federal or California law. The Court is permitted to look to the record underlying defendant's prior convictions to resolve this issue. <u>See</u> <u>United States v. Barnason</u>, --- F. Supp. 2d ---, 2012 WL 426438, at *4–5 (S.D.N.Y. Feb. 10, 2012) (analyzing record of prior criminal prosecution to determine admissibility of Rule 415 evidence in subsequent civil action).

## 2. Whether Facts Underlying Defendant's Prior California Convictions Demonstrate Force or Lack of Consent

The government asserts that defendant "knowingly caused [the 16-year-old California victims] K.S. and S.C. to engage in sexual acts by using or attempting to use force" in violation

of federal law, and therefore evidence of those acts is admissible under Rule 413.[5]  Opp'n at 13 (alterations omitted).  Alternatively, the government contends that defendant "knowingly engaged in sexual contacts with K.S. and S.C. without [their informed or actual] consent."  Id. at 20 (alterations omitted).  Each is discussed in turn.

### a.  Use of Force

During defendant's mid-1990s trial, K.S. testified about an incident in January 1992 in which defendant was "very forceful" while having intercourse with her and that she felt like he was "raping" her.  Opp'n at 13 (quoting Reporter's Transcript from defendant's Orange County trial (hereinafter "RT") at 351–52).  The relevant portions of K.S.'s testimony on direct examination is as follows:

Q. [by the prosecutor:] TELL US WHAT HAPPENED.

A. THERE [WAS] A TIME, UM, AFTER HE [defendant] HAD INTERCOURSE WITH ME AND I FELT THAT HE, THAT HE WAS VERY FORCEFUL WITH ME.  AND I WAS CRYING.  AND I TOLD HIM HOW I FELT.  AND I TOLD HIM, "I FEEL LIKE—I FEEL LIKE YOU'RE RAPING ME."

* * *

Q. [by the court:] DID HE SAY ANYTHING [in response]?

A. HE DIDN'T SAY ANYTHING.  HE DIDN'T SAY ANYTHING.  FROM WHAT I REMEMBER HE DID NOT SAY ANYTHING.  HE MADE NO COMMENT AFTER THAT AT ALL.

RT at 351–52.

According to the government, this incident is admissible under Rule 413 because it is "illegal to knowingly cause another person to engage in a sexual act by using or attempting to

---

[5]Even though defendant has never been charged with forcible rape, the relevant inquiry for admissibility under Rule4 13 is whether defendant's conduct was prohibited by Chapter 109A, and not whether the conduct was ever subject of a criminal prosecution.  See Blind-Doan v. Sanders, 291 F.3d 1079, 1082 (9th Cir. 2002); see also United States v. Dillon, 532 F.3d 379, 387 (5th Cir. 2008) ("To be admissible under Rule 413, the uncharged 'offense of sexual assault' need not be established by a conviction.").

**CRIMINAL MINUTES - GENERAL**

use force."  Opp'n at 15 (citing 18 U.S.C. § 2241 ("Whoever . . . knowingly causes another person to engage in a sexual act— (1) by using force against that other person . . . shall be fined under this title, imrpisoned for any term of years or life, or both.")).  The government also contends that K.S. testified about a separate incident that took place on November 9, 1991, in which defendant was "forceful" while causing her to orally copulate him, an act which "made [her] sick."  Opp'n at 17 (quoting RT at 498–99).  Further, the government points to K.S.'s sentencing letter in which she wrote the following:

> I suffered from sexual molestation inflicted upon me by the defendant.  Malnourished, confused, and frightened[,] I did not have a chance to resist and when I finally got the courage to tell the defendant to stop coming into my room [in] the mornings that his girlfriend left for court reporting school, he did not respect what I told him and continued to come into my room despite what I had told him, and despite the fact that he knew what he was doing was hurting me.  On one occasion[,] the defendant came into my room when I had a fever of 102 (I was physically ill at the defendant's apartment many times because of stress and malnourishment) [, and] the defendant got on top of me [and] straddled my neck and chest with his legs.  I was already incapacitated because I was ill and when the defendant attempted to use my mouth to orally copulate him, I began to choke.  He continued what he was doing even though I was very ill, very thin, very pasty white[,] and was choking the entire time he was doing this to me.  The defendant is a very heavyset man and to struggle at that time would have been futile.

Opp'n, Exh. B at 15.

Finally, the government asserts that the other minor victim, S.C., wrote to the court in her sentencing letter that defendant used force to make her swallow his semen when she orally copulated him, even though doing so made her uncomfortable and sick:

> I told him I was physically uncomfortable when I [orally copulated him.] Choking so hard at times I felt I was ready to throw up.  He held my head tightly against him so I couldn't pull out in time.  At first, I refused to swallow his [ejaculate] but he told me that I was not giving my full 100%, that he always gave me his full 100%[,] and that I should do the same.  When I [orally copulated him] he would wait for me to swallow as much as I could stand and then "pull me up."  I had a sickening feeling in my stomach afterward and while I was doing it I always thought I was sucking on an ice-cream cone.  If I didn't do that, I would probably throw up.

Opp'n, Exh. C at 28–29 (emphasis omitted).

According to the government, this evidence demonstrates that defendant used force to commit the sexual assaults, and is therefore admissible regardless of whether defendant was charged with force-specific crimes. Opp'n at 19 (citing United States v. Dillon, 532 F.3d 379, 387 (5th Cir. 2008) ("To be admissible under Rule 413, the uncharged 'offense of sexual assault' need not be established by a conviction.")). The government therefore seeks to introduce the conviction documents related to Count 4 and live testimony from K.S. and S.C. as evidence of these incidents. Id. at 20.

Defendant responds that Boyajian "was not accused of using or attempting to use force in any of the charged counts, and it seems improper for the government now, almost two decades later, to attempt to recast the prior case in this manner." Reply at 7. Further, defendant asserts that, because force was not an element of the charged offenses or a triable issue, "the record is incomplete about what actually transpired," especially as to uncharged incidents for which there was no cross-examination. Id. As to the merits of the government's arguments, defendant asserts that the government improperly conflates "force," i.e. "sexual contact result[ing] from restraint upon the other person," with "force," i.e. forceful sex. Id. at 8 (quoting United States v. Fulton, 987 F.2d 631, 633 (9th Cir. 1993)). In other words, according to defendant there is "no evidence that [Boyajian] used force to cause [S.C. and K.S.] to engage in these alleged acts." Reply at 8–9.

Based on the stale record alone, the Court cannot conclude that defendant's alleged use of "force" qualifies as a "crime under federal law" as defined in Rule 413. Although certain testimony and evidence submitted by the government suggests that defendant used force "sufficient to overcome, restrain, or injure" K.S. and/or S.C., see Fulton, 987 F.3d at 633, defendant is entitled to more than a possibility that his prior sexual encounters with K.S. and/or S.C. involved a criminal use of force. Accordingly, the Court concludes that an evidentiary hearing is necessary to determine whether defendant's prior conduct amounts to forcible sexual assault such that those acts are admissible under Rule 413.

### b.     Lack of Consent

The government asserts that the nonconsensual nature of the relationship between defendant and his minor victims is apparent for two different reasons. First, the government argues that under the circumstances (i.e., the vast age difference between defendant and the victims, the financial support defendant supplied to the victims, etc.), K.S. and S.C. could not have given informed consent as a matter of law. Opp'n at 20–21. Alternatively, the government contends that there is evidence of three particular incidents to which K.S. and S.C. did not give actual consent. Opp'n at 21.

### i.    Informed Consent

As to both K.S. and S.C., the government contends that any consent they gave was "uninformed, manipulated, and the result of defendant's grooming behavior." Opp'n at 23 (alterations omitted). According to the government, "their trial testimony and letters to the sentencing judge demonstrate that defendant deceived them into thinking they were in real relationships when really they were nothing more than pawns on defendant's sexual gameboard." Id. at 24. Because defendant was in his 30s at the time he engaged in sexual relations with both K.S. and S.C., and because defendant provided financial assistance to each of them and encouraged the girls to emancipate from their parents, the government submits that any consent they gave could not have been informed as a matter of law. Id. at 25–36.

Defendant responds that "[t]he government fails to cite any authority for the proposition that a defendant's alleged 'manipulation' and 'grooming' of his victims can negate consent." Reply at 10. Defendant further asserts that, because the victims' consent was not at issue, "the record may be incomplete about what actually transpired." Id. n.2. To this point, defendant notes that "K.S. never testified that her consent was uninformed or involuntary," but in fact "told police it was all consensual." Id. at 11 (citing RT at 418). Similarly, defendant asserts that S.C. "never testified that her consent was uninformed or involuntary," but instead testified that her sexual encounters with defendant were consensual. Id. (citing RT at 1502–03, 1521).

The Court has grave doubts that a minor girl in K.S. or S.C.'s situation is capable of giving informed, legal consent to a sexual relationship with a significantly older man who provides the girl with financial assistance and encourages emancipation from her family. Nevertheless, the government has not provided, and the Court cannot find, any case law or other legal authority standing for that proposition. Cf. Tobias, 25 Cal. 4th at 333–34 ("[I]n some cases at least, a minor may be capable of giving legal consent to sexual relations. . . .Of course, a minor might still be found incapable of giving legal consent to sexual intercourse in a particular case. . . ."). Accordingly, the Court cannot conclude as a matter of law that K.S. and S.C.'s consent was legally insufficient.

### ii.    Actual Consent

The government asserts that K.S. did not consent to an uncharged assault in November 1991 or a charged assault in January 1992 (Count 4), and that S.C. did not consent to a charged September 1993 assault (Count 13). Opp'n at 22. The uncharged November 8, 1991 incident involved defendant supplying K.S. with alcohol and taking her virginity. K.S. testified about the incident as follows:

> Q.    [by the prosecutor] DID YOU HAVE A PARTICULAR EMOTIONAL REACTION TO WHAT WAS HAPPENING?
>
> A.    YES.  I WAS CRYING.
>
> Q.    WHILE YOU WERE CRYING DID MR. BOYAJIAN SAY ANYTHING TO YOU ABOUT YOUR CRYING?
>
> A.    HE TOLD ME TO BE QUIET BECAUSE OTHER PEOPLE WOULD HEAR ME. . . .
>
> Q.    WHEN YOU GOT BACK HOME THAT DAY, DO YOU RECALL WHAT YOUR EMOTIONAL STATE WAS—
>
> A.    YES.
>
> Q.    WHAT WAS IT?
>
> A.    ON THE WAY HOME I WAS CRYING AND SHAKING.  AND THEN WHEN I GOT HOME, I WAS PRETTY FREAKED OUT.  I WAS SHAKING.  I WAS CONFUSED.  I REALLY DIDN'T UNDERSTAND WHAT HAD JUST HAPPENED.

RT at 307–09; see id. at 410 (testifying that the incident made her sick).

The government also asserts that a January 1992 incident (charged in Count 4) in which defendant was "very forceful" in engaging in sexual intercourse with K.S., discussed supra, demonstrates her lack of actual consent.  Further, K.S. wrote in her sentencing letter that defendant "abused my trust" when he "sexually molested me and convinced me to run away," and that he "scared me to death."  Opp'n, Exh. B at 12.  In sum, the government argues that "K.S.'s crying, shaking, and feeling that she had just been raped, in addition to her desire to resist and her affirmative request that defendant not have sex with her, are plainly inconsistent with consensual sex."  Opp'n at 43.

The government makes similar arguments with regard to S.C.  Specifically, the government argues that testimony regarding the conduct charged in Count 13 shows that S.C. did not actually consent to sex on September 17, 1993, the day defendant and S.C. began their relationship:

Q.  [by the prosecutor] WHAT WAS IT THAT OCCURRED THAT STARTED THIS SEXUAL RELATIONSHIP[?]

A.  IT WAS AFTER A FOOTBALL GAME AND WE WERE WATCHING TV OUT IN HIS LIVING ROOM.

Q.  THIS IS HIS LIVING ROOM AT HIS APARTMENT IN NEWPORT BEACH?

A.  YES.  AND HE PROCEEDED TO ASK ME TO GO INTO HIS ROOM WITH HIM AND I DID, AND WE BEGAN KISSING AND MAKING OUT.  AND HE SAID, "I'M GOING TO PUT A CONDOM ON," AND I SAID OKAY.  AND I SAID, "I DON'T WANT TO DO THIS, I'M NOT READY."  AND HE SAID, "WELL" —HE KEPT ON KISSING ME.  "COME ON, I REALLY CARE ABOUT YOU AND I WANT THIS TO WORK," AND, YOU KNOW, "I REALLY LIKE YOU."

RT at 1137–38; see id. (testifying that the two proceeded to engage in sexual intercourse).

As with K.S., the government asserts that S.C.'s sentencing letter is additional evidence demonstrating her lack of consent to an uncharged incident in which defendant forced her to orally copulate him.  Opp'n at 46–47.

In response, defendant contends that K.S. told investigating officers that her sexual encounters with defendant were consensual and that defendant was "her lover" and "best friend."  Mot. at 6 (citing RT at 418, 455, 476, and 862).  Defendant asserts that S.C. similarly testified that all of the sexual acts were by "mutual consent" and that she had fallen in love with defendant and discussed marriage.  Mot. at 7 (citing RT at 1502–03, 1521).  Defendant again notes that neither K.S. nor S.C. ever expressly testified that they did not consent to any particular sexual encounters, nor was consent at issue during trial.  Reply at 10–11.

As discussed above, based on the stale record alone the Court cannot conclude that K.S. and/or S.C. did not provide actual consent to sexual relations with defendant.  Consent was not at issue in defendant's Orange County trial and certain evidence, such as the sentencing letters, was not subject to cross-examination by defendant.  Accordingly, without an evidentiary hearing, the Court cannot conclude that K.S. and S.C. did not actually consent to sexual relations with defendant.

### 3. Whether Evidence is Admissible Pursuant to Rule 404(b)

The government has consistently maintained that the conviction documents for all 22 of defendant's prior counts and the live testimony of K.S., S.C., and defendant's other underage girlfriend V.R. are admissible pursuant to Rule 404(b) even if that evidence is not admissible pursuant to Rules 413 and 414. The Court never reached the Rule 404(b) analysis because it previously concluded that the evidence is admissible under Rules 413 and 414. Dkt. No. 111. In light of the foregoing, however, the Court must now reach the issue of admissibility under Rule 404(b).

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). Evidence is therefore admissible under Rule 404(b) if it (1) tends to prove a material fact; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) if admitted to prove intent or knowledge, the act is similar to that charged. United States v. Tsinnijinnie, 91 F.3d 1285, 1288–89 (9th Cir. 1996). Such evidence should be admitted "unless its prejudicial impact substantially outweighs its probative value" pursuant to Rule 403. United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997).

According to the government, the proffered evidence demonstrates defendant's "intent, identity, knowledge, and modus operandi in committing the charged offenses against [10-year-old Cambodian minor] S.L." Opp'n at 47. Specifically, the government asserts that the "core" of defendant's sexual misconduct "was that he engaged in illicit sexual acts—in particular to satisfy his obsession with oral sex—with young and young-looking girls of a particularly tiny physical type, over whom he established power and control." Id. at 47–48. The government asserts that defendant was "obsessed" with receiving oral sex and forcing his victims to swallow his semen, and testimony "will describe his efforts to keep [the girls] small, in keeping with his particular sexual appetites." Id. at 48. The government therefore argues that defendant's intent in seeking sex with S.L. in Cambodia was to satisfy the same sexual urges he demonstrated years before in California. Id. Further, the government contends that the evidence demonstrates defendant's identity, because it shows that "he was the same person who sought this specific kind of sex in the 1990s," shows his knowledge because it demonstrates "that he knows how to create, foster, or buy the girls that satisfy his sexual proclivities." Id. Finally, the government asserts that the "strongest argument" for the admissibility of this evidence under Rule 404(b) is that defendant's prior sexual misconduct in California "presents a nearly identical modus operandi that has remained meaningfully unchanged since 1991." Id. at 49.

## CRIMINAL MINUTES - GENERAL

Defendant responds that "there can be little doubt that the government improperly seeks to introduce this evidence to show the defendant's propensity to commit the charged offense." Reply at 12. With regard to defendant's "intent," defendant asserts that Count Two is a "general intent crime" meaning the proposed evidence would be inadmissible as to that count, and that "it is highly doubtful that defendant's consensual relationships with two 16-year-old high school students in the early 1990s were part of his mental thought process when he was flying to Cambodia almost two decades later to allegedly engage in prostitution with children" as charged in Count One. Id. Defendant further argues that the evidence is not admissible under the "identity" prong of Rule 404(b) because defendant's identity is not at issue. Id. at 13 (citing 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5246, at 514–15 (1978)). Defendant also contends that the "knowledge" prong is inapplicable because the government's assertion that defendant "groomed" or "manipulated" S.L and S.C. "hardly demonstrates any specialized or uncommon knowledge about one's ability to procure child prostitution halfway around the world in Cambodia." Id. at 14. Finally, defendant argues that the evidence is not admissible under the "modus operandi" prong because the government cannot draw reasonable similarities "between two California high school girls from Orange County and a ten-year-old Vietnamese child prostitute living in a Phnom Penh village" to demonstrate the type of "signature" or "unique" modus operandi as required by Rule 404(b). Id. at 15–16. Alternatively, defendant maintains that the evidence is unfairly prejudicial and therefore excludable under Rule 403. Id. at 16.

The Court concludes that the proffered evidence is probative of defendant's modus operandi. "[I]n order to admit Rule 404(b) identity evidence on the signature facts or modus operandi theory, the District Court must make a threshold determination that, based solely on the evidence comparing the past acts and the charged offense, a reasonable juror could conclude that the same person committed both crimes." United States v. Carroll, 207 F.3d 465, 469 (8th Cir. 2000). Here, the past acts, while not identical to the presently charged crimes, are related closely enough to warrant admission under Rule 404(b), a "rule of inclusion." United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008) (quoting United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007)). Specifically, K.S. and S.C. will testify that defendant initiated sexual relationships with them when he was adult and they were underage; that both victims were virgins until defendant had sexual intercourse with them; that he was obsessed with them performing oral sex on him; that he controlled their food intake to keep them physically small and young looking; and that he provided living expenses, food, and clothing as partial consideration for sex.[6] Similarly, defendant sought out petite, virginal, skinny minors in

---

[6]For example, K.S. stated that she was 93 pounds while living with defendant, despite normally weighing 110 pounds, and that "defendant told [her] that [she] ate too much and that

## CRIMINAL MINUTES - GENERAL

Cambodia to satiate his oral sex fixation, and provided financial benefits to his alleged victims and their families. The combination of defendant providing financial support for underage, skinny, virginal minors and engaging in similar sexual acts—especially his alleged fixation on oral sex—provides a sufficiently unique pattern of conduct to satisfy the admissibility standards of Rule 404(b). See, e.g., United States v. Gonzalez, 533 F.3d 1057, 1064 (9th Cir. 2008) ("Beyond propensity, the evidence established a way of behavior that could be reasonably relied upon by a juror to convict [defendant] of the charged offenses."); Tsinnijinnie, 91 F.3d at 1288–89. Finally, the proffered evidence is not too remote in time. See United States v. Hadley, 918 F.2d 848, 850–51 (9th Cir. 1990) (10–15 years not too remote in time); United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (thirteen years not too remote in time).[7]

The probative value of this evidence is not outweighed by the danger of unfair prejudice. To the contrary, the similarities between the "other acts" evidence and the charged crimes is highly probative of defendant's modus operandi and intent in allegedly committing the charged crimes, and the mere fact that evidence is "inflammatory" or "emotionally charged" is not dispositive. United States v. LeMay, 260 F.3d 1018, 1030 (9th Cir. 2001); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989) (probative value not outweighed by unfair prejudice where prior conviction has a "clear logical connection" to the issue of knowledge and intent in the present case).

Accordingly, defendant's motion to exclude evidence of defendant's prior California convictions and facts underlying those acts is DENIED. The evidence is admissible pursuant to Rule 404(b). If needed, the parties may hold an evidentiary hearing regarding whether this evidence is separately admissible pursuant to Rule 413. To the extent the Court's prior ruling

---

[she] would gain weight and become fat." Opp'n, Exh. B at 15; see also Dkt. No. 55, Exh. B at 3 (Orange County probation report) (defendant's obsession with K.S.'s food intake and statements that she looked fat caused her to drop from 110 pounds to approximately 90 pounds and develop an eating disorder). Similarly, one of defendant's other victims, V.R., will testify that defendant controlled the amount of food she was allowed to eat and would not let her weigh more than 115 pounds. Dkt. No. 55, Exh. J at 4.

[7]Further, the evidence bears on defendant's intent to travel in foreign commerce with the purpose of engaging in illicit sexual conduct with a minor charged in Count One and his intent to commit the sex acts charged in Count Two. Although defendant asserts that Count Two is a general intent crime, and therefore the government may not introduce evidence bearing on defendant's intent unless he opens the door, "federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense." Curtin, 489 F.3d at 940.

held that the evidence is admissible pursuant to Rule 413, it is vacated and superseded by this order.

### B.     Motion to Sever Counts One and Two

Count One charges defendant with "travel[ing] in foreign commerce . . . for the purpose of engaging in illicit sexual conduct," and is satisfied even without a showing that a sexual assault occurred.  18 U.S.C. § 2423(b).  Count Two charges defendant with engaging in illicit sexual conduct with a minor in foreign places.  18 U.S.C. § 2423(c).  Defendant argues that these counts should be bifurcated because evidence of defendant's prior sexual proclivities with minors pursuant to Rules 413 and 414 is "inadmissible on counts that do not accuse [] defendant of sexual assault or child molestation."  Mot. at 7 (relying on United States v. Courtright, 632 F.3d 363, 365 (7th Cir. 2011) and United States v. Wellman, 2009 WL 159301, at *1 (S.D. W. Va. Jan. 20, 2009)).  In other words, even if defendant's prior sexual acts are admissible to prove Count Two, such evidence is inadmissible for purposes of Count One and, therefore, Count One must be severed.  Id.

In opposition, the government asserts that "defendant is charged in Count Two with acting on the intentions charged in Count One," meaning "[t]he evidence regarding Counts One and Two is virtually identical" and that severance would unduly waste judicial time and resources.  Opp'n at 1.  Moreover, the government argues that the prior acts evidence is "independently admissible as to Count One because it is direct evidence of the requisite intent for the charged offense."  Id. at 2.

Federal Rule of Criminal Procedure 8 permits joinder of multiple offenses when they are "of the same or similar character," "based on the same act or transaction," or are "connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8.  "[J]oinder is the rule rather than the exception," and a denial of severance "will be upheld absent a showing that 'joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever.'"  United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1988) (quoting United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980)); see also United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir. 2007) ("[C]oncerns of judicial economy strongly supported the denial of the motion to sever in this case.  Each of the alleged offenses arose from the same act or transaction, and there was significant overlap in the evidence for all charges.").

The Court concludes that severance of Counts One and Two is not warranted.  First, as discussed above, the Court is not presently admitting evidence of defendant's prior sexual acts

under Rule 413, but rather admitting it under Rule 404(b).  This allays defendant's primary concern that Rule 413 evidence is inadmissible as to Count One.[8]

Furthermore, the proffered evidence is relevant and probative as to Count One.  For the government to obtain a conviction on that count, it must prove that defendant's dominant purpose of traveling in foreign commerce was to engage in a criminal sexual act.  E.g., United States v. Hayward, 359 F.3d 631, 638 (3d Cir. 2004).  Although it is not a requirement that the government prove defendant engaged in a criminal sexual act to succeed in obtaining a conviction on Count One, testimony and evidence demonstrating that he committed prior criminal sexual acts is obviously probative of his state of mind at the time of travel.  In United States v. Dinghra, the defendant was charged with enticing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  United States v. Dinghra, 371 F.3d 557, 559 (9th Cir. 2004).  At trial, the district court permitted testimony that the defendant had fondled the victim.  On appeal, the defendant argued that because sexual contact is not an element of a § 2422(b) offense, admission of such testimony was unduly prejudicial.  Id. at 565.  The Ninth Circuit disagreed, concluding that "[t]estimony regarding sexual contact with a minor is particularly relevant in the context of a prosecution under § 2422(b) because intent is a key element of a crime. . . . What could be more probative of illicit purpose than carrying through with the sex act itself?"  Id.  Thus, the Ninth Circuit affirmed the district court's decision to permit evidence of the defendant's sexual conduct because, "[a]lthough evidence of sexual contact is not required under § 2422(b), it is certainly probative."  Id.; United States v. Julian, 427 F.3d 471, 486 (7th Cir. 2005) (upholding admissibility of evidence of "forcible rape" as an act in

---

[8]Even if the Court determines that the evidence is admissible under Rule 413, severance would not be warranted.  Rule 413 states that prior sexual acts are admissible "[i]n a criminal *case* in which a defendant is accused of sexual assault."  Fed. R. Evid. 413 (emphasis added).  Here, there is no dispute that Count Two charges defendant with an act of sexual assault.  Although defendant contends that Count One does not charge defendant with an act of sexual assault and therefore the Rule 413 evidence is inadmissible as to that offense, Rule 413 does not differentiate between or among counts in an indictment.  Rather, the plain language of the statute is that prior acts are admissible in any "case" in which a defendant is so accused.  This interpretation is consistent with Congress's intent for courts to broadly interpret Rules 413 and 414.  See, e.g., United States v. Larson, 112 F.3d 600, 605 (2d Cir. 1997) ("The legislative history of Rule 414 reveals that Congress meant its temporal scope to be broad, allowing the court to admit evidence of [prior sexual acts] that occurred more than 20 years before trial."); United States v. Hollow Horn, 523 F.3d 882, 887–88 (8th Cir. 2008) (broadly interpreting Rule 413 and upholding admission of prior sexual assault of an adult that occurred more than 11 years before trial for sexual assault of a minor).

## CRIMINAL MINUTES - GENERAL

furtherance of the charged conspiracy to travel in foreign commerce for the purpose of engaging in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (3)).

The same rationale applies here. Specifically, evidence and testimony that defendant engaged in criminal sexual acts before going to Cambodia and while in Cambodia is circumstantial evidence of his intent to do so at the time of travel, and is therefore relevant and probative of Count One. Severing Count One from Count Two would unduly waste time and resources, and joinder of the counts is not "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy. . . ." Whitworth, 856 F.2d at 1277. Accordingly, defendant's motion to sever Counts One and Two is DENIED.

### C.      Motion to Dismiss Count Three on Equal Protection Grounds

Count Three charges defendant with Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender in violation of 18 U.S.C. § 2260A. Section 2260A states:

> Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision.

18 U.S.C. § 2260A.

Defendant moves to dismiss Count Three on the ground that § 2260A violates the equal protection clause of the United States Constitution for three reasons: first, defendant contends that the Court's 1995 order requiring defendant to register as a sex offender violates equal protection as subsequently held by the California Supreme Court in People v. Hofsheier, 37 Cal.4th 1185 (2006); second, defendant asserts that the enactment of § 2260A was beyond Congress's authority under the Foreign Commerce Clause; and finally, defendant argues that § 2260A violates equal protection because it impacts only those individuals who were previously convicted of a sex offense in a state that required sex offender registration, leading to disparate treatment among individuals in different states. Mot. at 1. The Court discusses each of defendant's arguments in turn.

In People v. Hofsheier, the California Supreme Court held that imposing a mandatory lifetime sex offender registration requirement on a defendant convicted of oral copulation with a

16- or 17-year-old pursuant to Cal. Penal Code § 228a(b)(1) violated equal protection because a defendant convicted of engaging in sexual intercourse with a 16- or 17-year-old pursuant to Cal. Penal Code § 261.5 was not subject to the mandatory registration requirement. Hofsheier, 37 Cal.4th at 1206–07. The court concluded that the proper remedy for the constitutional violation was "*discretionary* sex offender registration" by which a defendant could seek a hearing to determine whether that particular defendant should be subject to a lifetime registration requirement. Id. at 1208–09 (emphasis in original). Specifically, the court held that Cal. Penal Code § 290(a)(2)(E) (now Cal. Penal Code § 290.006) "gives a trial court discretion to order lifetime registration as to any offender even if the defendant was not convicted of a sexual offense if the trial court finds that 'the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification.'" Id.

Following Hofsheier, defendants convicted of oral copulation with a 16- or 17-year-old who were subject to mandatory registration requirements could seek relief by filing a petition for writ of mandate. See People v. Picklesimer, 48 Cal.4th 330, 335 (2010) (holding that claims under Hofsheier by defendants no longer in custody must be brought by a petition for writ of mandate). The court rejected the argument that, following, Hofsheier, defendants convicted of oral copulation with a 16- or 17-year-old were freed from registration requirements as a matter of law. Id. at 343.

Here, defendant has not availed himself of potential relief by filing a petition for writ of mandate. Accordingly, at the time he traveled to southeast Asia in 2008, he was still required to register as a sex offender pursuant to his prior conviction, and defendant's argument to the contrary must be rejected. See Picklesimer, 48 Cal.4th at 343 ("[I]n cases where mandatory sex offender registration has been shown to violate equal protection, the procedure that most closely matches the legislative intent is not automatic removal of a sex offender from the state sex offender registry, but an after-the-fact discretionary determination whether removal is appropriate."). To grant defendant relief from the registration requirement when he has not sought discretionary relief contravenes the procedural mechanisms set forth in Hofsheier and Picklesimer.

Defendant's argument that the enactment of § 2260A was beyond Congress's authority under the Foreign Commerce Clause is also without merit. The Court previously concluded that the statutory provisions charged in Counts One and Two, 18 U.S.C. § 2423(b) and (c), are within Congress's authority to pass under the Foreign Commerce Clause. Dkt. No. 90 at 7. For purposes of the present indictment, a violation of § 2260A requires the government to prove (1) that defendant was obligated to register as a sex offender, and (2) a violation of § 2423. Because the elements of § 2423 are necessarily incorporated into § 2260A by way of reference, § 2260A as charged in this case does not violate the Foreign Commerce Clause. See United

States v. Clark, 435 F.3d 1100, 1116–17 (9th Cir. 2006), cert. denied, 127 S.Ct. 2029 (2007) (concluding that the enactment of § 2423 was within Congress's power under the Foreign Commerce Clause).

Finally, the Court finds that it is not ripe to reach defendant's argument that § 2260A violates equal protection based on alleged disparate treatment among offenders from different states. Because § 2260A is a sentence-enhancement statute, the Court need not reach the question of whether it violates equal protection unless and until defendant is found guilty of Counts One and/or Two. Accordingly, the Court defers final resolution of this motion until such occasion arises.[9]

## III.   GOVERNMENT'S MOTION *IN LIMINE*

The government moves *in limine* for the introduction of the following evidence, as detailed more fully infra:

- Child pornography "brothel"[10] photographs of a young female who is nude and lying on her back with her legs spread as "inextricably intertwined" evidence or alternatively admissible pursuant to Rule 404(b);
- A representative subset of photographs of little girls and little girls' feet and legs pursuant to Rule 404(b);
- Two child pornography videos pursuant to Rule 404(b); and
- The total volume of photographs of little girls and the calendar pages documenting the dates upon which the photos of little girls' feet and legs were taken pursuant to Rule 404(b).

According to the government, all of this information was retrieved from the "unallocated space" in the hard drives of defendant's Macbook and Western Digital external drive that were seized in Cambodia. Mot. at 1. The government asserts that the photographs and videos will help rebut anticipated defense arguments that the digital media does not belong to defendant, that the digital media was tampered with, that defendant is not sexually attracted to little girls,

---

[9]The Court notes that sex offenders are not a suspect class, meaning the law would not violate equal protection unless defendant is able to demonstrate that it fails rational basis review. See McGowan v. Maryland, 366 U.S. 420, 426 (1961).

[10]Defendant objects to any reference to the building as a "brothel." The Court finds that the term "brothel" is unduly prejudicial and will therefore refer to the structure as the "Cambodian hut" and instructs the government to do likewise.

**CRIMINAL MINUTES - GENERAL**

and/or that the minor girls are mistaken or lying in identifying defendant as the perpetrator.[11] Id. at 3. The government further argues that the anticipated testimony of the four minor victims will corroborate what is depicted in the photographs and on the videos. Id. at 9–11. In the government's view, all of the proffered evidence is probative of defendant's intent, plan, modus operandi, knowledge, and to rebut any claimed mistake. Id. at 17–28.

In opposition, defendant asserts that because files discovered in the "unallocated space" on digital media cannot be viewed or accessed by the user without the aid of specialized software, the presence of such files cannot be admitted to establish a defendant's knowing possession of them. Opp'n at 2 (citing United States v. Flyer, 633 F.3d 911, 918–20 (9th Cir. 2011) and United States v. Moreland, 665 F.3d 137, 150–52 (5th Cir. 2011)). Thus, defendant argues that this fact "undermines the foundation for each and every one of the government's arguments." Id. Defendant also attacks the chain of custody of defendant's digital media as an alternative basis to undermine their foundational adequacy. Id. at 4–5. Further, defendant contends that the government seeks the admission of its proffered evidence only to prove defendant's character in order to show his action in conformity therewith in violation of Rule 404(b). Id. at 3. Finally, defendant maintains that such evidence is unfairly prejudicial and should be excluded under Rule 403. Id. at 4.

The government, in reply, asserts that defendant owned and utilized data recovery software known as Data Rescue II such that the data's presence in unallocated spaces of the hard drives does not render the evidence inadmissible. Reply at 4–9.

**A.      Whether the Government Has Established a Foundation of "Knowing Possession" for the Proffered Evidence**

When computer data is "stored in accessible areas of a hard drive or could have been downloaded and retained by a computer's automatic processes without the computer owner's knowledge," courts have "treated as determinative whether the defendant had sufficiently expert computer knowledge to know about and access those files or whether there were independent facts that showed the defendant's knowledge and dominion of child pornography images on the computer." United States v. Moreland, 665 F.3d 137, 153 (5th Cir. 2011).

Here, the government has provided ample proof that defendant knew of and was able to access the data stored in the hard drives' unallocated space. On May 12, 2008, defendant sent

---

[11]At oral argument, the government assured the Court that it plans to introduce this evidence to corroborate the minor girls' testimony only if the defense attempts to impeach them.

an email to sales@prosofteng.com, indicating in the subject line that he had lost his serial number for the Data Rescue II software.  See opp'n, Exh. B ("Email Chain" between defendant and Prosoft).  Defendant included in his email a photograph of the back cover of his Data Rescue II software packaging, which promotes the product as "the best data recovery utility on the market for recovering files from a problem hard drive."  Id.  The packaging touts the software's ability to "[r]ecover[] all types of files from your hard drive"; "[r]ecover[] deleted digital pictures from your camera media even after it [has] been erased"; and "[r]ecover[] Pictures, Movies, and Music from Mac and PC drives, iPods, Cameras, and any type of digital media card."  Id.  Prosoft provided defendant with a new serial number for his Data Rescue II software the same day he requested it, which was thereafter installed on both defendant's Macbook hard drive and Western Digital external hard drive.[12]  Id.; see also Reports of computer forensic expert Bruce Pixley, dated October 31, 2011 and July 10, 2012 (attached to government's opp'n, Exhs. C and D).

Further, journal entries created by defendant demonstrate his knowledge of the Data Rescue II software and ability to access contents from a hard drive's unallocated space.  For example, defendant was scheduled to return to the United States on February 20, 2009, and notes in his journal what needed to be done prior to boarding the plane, such as to "[r]einstall

---

[12] After the August 27, 2012 hearing on these motions, defendant submitted an expert declaration by Jeffrey Fischbach purporting to show that defendant's Date Rescue II recovery software was "not operable in its current state."  Fischbach Decl. ¶ 5, Dkt. # 217.  Fischbach states that the copy of Data Rescue II was "'zipped,' meaning it has been compressed and stored."  Id.  Fischbach further opines that zipped software is not immediately useable, and that "[i]n order for such software to begin operating, several steps would have to be taken, including having it 'unzipped,' installed, and then commanded by the user to attempt to recover deleted files."  Id.  The government submitted a declaration by Bruce Pixley in response.  Pixley confirms that defendant's copy of Data Rescue II was zipped, but explains that "[a] Zip file is simply a digital container that holds one or more files in a compressed state."  Pixley Decl. ¶ 5.  Pixley goes on to opine that "[a] MacBook user can easily open a Zip file. . . . The user simply double-clicks on the file, which will automatically extra the contents.  Once the file(s) are extracted, they are readily accessible to the user."  Id. ¶ 6.

Accordingly, even though the Data Rescue II software was zipped and hence not immediately usable, defendant could have easily extracted its contents and used the software to access unallocated space on the hard drive.  Defendant's possession of the software, zipped or unzipped, therefore provides evidence that he knew about and had access to the files on the unallocated space of his hard drive.

software" and to "erase HD [hard drive]." <u>See</u> Gov't Exhibits in support of Rule 404(b) motion, Exh. C (Bates No. 4143). Defendant also references certain photographs and movies taken with his camera and camera phone and stored "on HD [hard drive]," indicating that he "[has] to erase them" and that it would be "[b]etter not to put them in [the] computer." <u>Id.</u> Further, defendant expressed concerns to a fellow inmate about what data is retrievable from a hard drive after it is deleted. <u>See</u> Opp'n, Exh. A at 57 (inmate testifying that defendant "was very interested in all the information on what can be retrieved after deletion versus being wiped. He was very concerned about that[.]").

The above evidence demonstrates that defendant knew certain data was stored in the unallocated portions of his hard drives and that he had "sufficiently expert computer knowledge to know about and access those files" such that the government has laid a foundation for its admissibility.[13] <u>Moreland</u>, 665 F.3d at 153; <u>cf.</u> <u>United States v. Kuchinski</u>, 469 F.3d 853, 862 (9th Cir. 2006) (vacating sentence because district court considered images in cache files even though there was "no evidence that [the defendant] was sophisticated, that he tried to get access to the cache files, or that he even knew of the existence of the cache files").

---

[13]Defendant's argument that chain of custody issues renders any evidence recovered from his digital media misses the point. At trial, the government is required to authenticate an object by making a prima facie showing "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). If the evidence is an object connected with the commission of a crime, the government must also establish chain of custody, which is sufficient proof that a reasonable juror could find that the item is in "substantially the same condition" as when it was seized. <u>United States v. Harrington</u>, 923 F.2d 1371, 1374 (9th Cir. 1991) (internal quotation marks and citation omitted). If the Court concludes that there is a "reasonable probability the article has not been changed in important respects," it may admit the evidence, and a potential gap in the chain of custody "goes *only* to the weight of the evidence," and not its admissibility. <u>Id.</u> (emphasis added). Here, the government has amply shown that a reasonable juror could find that the digital media is in the same condition as when it was seized. For example, the dates on which the digital media was last accessed are all before the seizure by law enforcement on February 20, 2009. Reply at 29. Moreover, defendant's journal refers to a Nokia N73 phone, a Nokia N95 phone, a Canon camera, and an external Western Digital hard drive. <u>See</u> Gov't Exhibits in support of Rule 404(b) motion, Exh. C (Bates Nos. 4137, 4138, 4142, 4143, 4145, and 4149). All of the photographs and videos seized were retrieved from those referenced devices. Accordingly, any argument that the chain of custody was broken "goes only to the weight of the evidence." <u>Harrington</u>, 923 F.3d at 1374.

## CRIMINAL MINUTES - GENERAL

Notwithstanding the above, the government has also set forth "independent facts that showed the defendant's knowledge and dominion" of the data found in the unallocated spaces of his hard drives as an alternative basis for establishing foundation. Moreland, 665 F.3d at 153. For example, all of the child pornography photographs of the girl lying on a bed in Cambodia were taken with a Canon IXUS 9100 Ti camera, the same make and model of camera seized from defendant's guesthouse room. Similarly, the more than 8,000 photographs of little girls—cropped and edited in a similar fashion so as to depict only the girls' feet and legs—were taken either with a Nokia N73 or N95 camera phone, the latter of which was seized from defendant's guesthouse room and both of which were referenced in defendant's journal. See, e.g., Gov't Exhibits in support of Rule 404(b) motion, Exh. C (Bates No. 4145). Defendant also refers to several child pornography videos in his journal that are unquestionably descriptive of those found on his hard drives. See id. (Bates No. 4138). Finally, the government's computer forensic expert Bruce Pixley discovered in defendant's Macbook reference to deleted "preference files," which is the term Apple uses to indicate a user's program settings and recently accessed files. Among those files were the names of child pornography videos. See Opp'n, Exh. I (Pixley report dated April 7, 2011) at 7.

This evidence shows that defendant knew of the existence of the data and files recovered in the unallocated spaces of his hard drives. See United States v. Stewart, 839 F. Supp. 2d 914 (E.D. Mich. 2012) ("The government presented evidence that each image was taken with the same camera as was found on the defendant at the border, was edited with the same software as was on the computers collected from the defendant at the border, and was stored on the computers found on the defendant at the border. . . .It was not an error for the prosecutor to argue the inference that the defendant had taken and cropped the images.").

Accordingly, the Court now turns to whether the proffered evidence is admissible as "inextricably intertwined" or pursuant to Rules 404(b) and 403.

### B.     Whether the Proffered Evidence is Admissible

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). Evidence is therefore admissible under Rule 404(b) if it (1) tends to prove a material fact; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) if admitted to prove intent or knowledge, the act is similar to that charged. United States v. Tsinnijinnie, 91 F.3d 1285, 1288–89 (9th Cir. 1996). Such

evidence should be admitted "unless its prejudicial impact substantially outweighs its probative value" pursuant to Rule 403.  <u>United States v. Johnson</u>, 132 F.3d 1279, 1282 (9th Cir. 1997).

Evidence should not be considered "other crimes" or "other act" evidence within the meaning of Rule 404(b) "if 'the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined.'"  <u>United States v. Dorsey</u>, 677 F.3d 944, 951 (9th Cir. 2012) (quoting <u>United States v. Soliman</u>, 813 F.2d 277, 279 (9th Cir. 1987)).  Two general categories of "other act" evidence are properly considered to be inextricably intertwined: "First, other act evidence may constitute a part of the transaction that serves as the basis for the criminal charge.  Second, admission of other act evidence may be necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  <u>Dorsey</u>, 677 F.3d at 951 (internal quotation marks, alterations, and citations omitted).

Each of the government's proffered evidence is discussed in turn.

### 1.    Child Pornography Photographs Taken in Cambodia

The government seeks to introduce a series of 27 photographs of a nude girl, approximately 10- or 11-years-old, lying on her back with her legs spread but whose face cannot be seen.[14]  Mot. at 20, Exh. A.  The photos were taken at the Cambodian hut defendant allegedly attended as evidenced by unique wall markings visible in the background of the photographs.  According to the government, this evidence is "inextricably intertwined" with the charged counts because the photographs "tie defendant to sexual activities engaged in at the very location from which defendant ran the night of his arrest on February 19, 2009, which was also the location at which defendant engaged in illicit sexual conduct with S.L."  <u>Id.</u>  Thus, the government maintains that the evidence "'add[s] to the circumstantial case against defendant'" that he traveled in foreign commerce with the "dominant purpose[]" to commit illicit sexual acts.  <u>Id.</u> at 20–21 (quoting <u>Dorsey</u>, 677 F.3d at 952).  The government also asserts that this evidence bears on the intent element of Count Two.  <u>Id.</u> at 21.

In opposition, defendant asserts that the EXIF data of the photographs indicates that they were taken with a Canon camera—the same type purportedly seized from defendant's room—on September 5, 7, and 21, 2007, dates on which "defendant's travel records show that he was not in Cambodia."  Opp'n at 9 (emphasis omitted).  Defendant also argues that the

---

[14]At times, the government and defendant state that there are 21 photographs instead of 27 photographs.  Exhibit A reflects that there are 27 photographs.

"inextricably intertwined" doctrine has been disapproved by appellate courts in recent years. Id. at 9–10 (citing United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010); United States v. Gorman, 613 F.3d 711, 718–19 (7th Cir. 2010)). Even if the Court considered whether the evidence was inextricably intertwined, defendant maintains that "none of the photographs or videos are part of the essential facts underlying the charges and the government can tell its story without introducing these images." Opp'n at 11–12. Lastly, defendant contends that even if the photographs were admissible as inextricably intertwined with the charged crimes, the government should redact the photographs to eliminate the young girl and only show the unique markings on the walls of the hut. Id. at 13.

In reply, the government asserts that the EXIF data is unreliable because it is set by the user, but in any event, it does not matter whether defendant was in Cambodia taking the photos or whether the photos are considered undated because what matters is that "prior to his arrest on February 19, 2009, defendant was aware that the location at which he was arrested was used for illicit sexual activity with minors." Reply at 18. The government further asserts that the presence of the girl in the photos is necessary because it shows that defendant "was aware that such activity took place there, undermining defendant's claim that he was at that location simply to drink whiskey with a friend." Id. at 19.

As an initial matter, defendant's contention that the inextricably intertwined doctrine has been disapproved in whole or in part in the Third and Seventh Circuits is not relevant, because the Ninth Circuit recently affirmed its viability in this circuit. Dorsey, 677 F.3d at 952. The Court is, of course, bound to follow Ninth Circuit law. In applying the Ninth Circuit's rules, the Court concludes that the 27 proffered images of child pornography taken at the Cambodian hut from which defendant fled are "inextricably intertwined" with the charged counts. Specifically, the indictment charges defendant with travel with the intent to engage in illicit sexual conduct with a minor and engaging in illicit sexual conduct with a minor in foreign places for the time period spanning from September 6, 2008, to February 19, 2009. Photographs found on defendant's digital media documenting child pornography in a location at which defendant was arrested in February 2009 "add[s] to the circumstantial case against defendant" that he had a sexual interest in minors and that he knew sexual activity involving minors occurred at that location. Dorsey, 677 F.3d at 952. The photographs also bear on the intent element in Count One, which requires the government to prove that one of the dominant purposes of his overseas travel was to engage in illicit sexual conduct with a minor. See United States v. Brand, 467 F.3d 179, 200 (2d Cir. 2006) (evidence is admissible if it is "near enough in kind to support an inference that [the defendant's] purpose included offenses of the sort charged") (internal quotation marks and citation omitted).

The fact that the dates of the photograph's EXIF data do not match when defendant was in Cambodia is not a basis to exclude the evidence for two reasons.  First, as the government points out, dates and times on a standalone camera (as opposed to a camera phone) must be set by the user, and are thus inherently unreliable.  Second, and most importantly, defendant possessed these photographs prior to being arrested at the location depicted in the photographs.  In other words, defendant's possession of the photographs shows his knowledge that illicit sexual activity with minors occurred at that specific hut and rebuts any claim that he was there for innocent reasons.[15]

> **2.  A Representative Sample of the More than 8,000 Photographs of Little Girls' Feet and Legs, and the Total Volume of Images of Little Girls and the calendar pages documenting the dates upon which the photos of little girls' feet and legs were taken**

The government's computer forensic expert, Bruce Pixley, has compiled 15 presentations of photographs that the government seeks to introduce at trial.[16]  A description of each presentation is as follows:

- A series of photographs of a minor girl taken on May 13, 2007, in front of a dance studio and a Jamba Juice in Cupertino, California;
- A series of photographs of a minor girl taken on August 10, 2007, at a Jampa Juice in Cupertino, California;
- A series of photographs of minor girls playing on round-shaped bean bag chairs taken on June 9, 2007, during defendant's trip to Thailand;

---

[15]Alternatively, the 27 photographs are admissible pursuant to Rule 404(b).  They are especially probative of not only defendant's intent in committing the crimes charge, but to to rebut defendant's anticipated defenses of lack of intent and mistaken identity.  See United States v. Curtin, 489 F.3d 935, 945 (9th Cir. 2007) (holding that sometimes "the only means of ascertaining that mental state is by drawing inferences from conduct"); Brand, 467 F.3d at 197 n.14 (noting that prior narcotics transactions were properly admitted to show that defendants were "not there just to be standing there on the night of their arrests") (internal quotation marks and citation omitted).  This highly probative evidence, while prejudicial, is not unfairly prejudicial and therefore not inadmissible under Rule 403.

[16]In total, the government has filed 22 such presentations, but indicates its intent to introduce the 15 presentations set forth more fully herein.  Gov't Exhibits in Support of Mot., Exhs. D1–D22.

- A series of photographs of minor girls playing on round-shaped bean bag chairs taken on June 10, 2007, during defendant's trip to Thailand;
- A series of photographs of minor girls in uniform leaving the Norodom school in Phnom Penh taken on February 5, 2009, that match an APLE surveillance report of defendant's activities on that day;
- A series of photographs of a minor girl sitting on a moped in front of a store in Phnom Penh taken on February 5, 2009, that match an APLE surveillance report and photographs of defendant's activities on that day;
- A series of photographs of the legs of 401 different minor girls (one photo per girl) taken with a Nokia N73 camera phone from December 16, 2006, to December 22, 2007;
- A series of photographs of the legs of 458 different minor girls (one photo per girl) taken with a Nokia N95 camera phone from January 2, 2007, to February 12, 2009;
- December 2006 calendar page with those dates in gray on which photographs were taken with the Nokia camera phone;
- A month-by-month calendar of the entire year of 2007 with those dates in gray on which Nokia camera phone photographs were taken;
- A month-by-month calendar of the entire year of 2008 with those dates in gray on which Nokia camera phone photographs were taken;
- January and February 2009 calendar pages with those dates in gray on which Nokia camera phone photographs were taken;
- A series of photographs of minor girls taken over the 2008 Labor Day weekend and the day after. These photographs were taken a few days before defendant's departure from the United States on September 6, 2008.
- A series of photographs of minor girls' legs and feet to demonstrate how defendant allegedly cropped the photos to show just the legs and feet, taken on September 2, 2008, four days prior to defendant's departure from the United States; and
- A series of photographs of minor girls taken on September 8, 2008, during defendant's layover in Thailand en route to Cambodia.

Gov't Exhibits in Support of Mot., Exhs. D1–D15.

The 15 presentations of photographs and calendar dates can be summarized into the following categories: (1) photographs of little girls' feet and legs; (2) calendar dates on which photographs were taken from 2006–2009; and (3) the total volume of images retrieved from defendant's digital media. See id. According to the government, the content and the "sheer volume" of these photographs are probative of defendant's intent, motive, knowledge, and planning, and therefore "directly relevant" to the intent that the government is required to prove

for Count One, as well as the knowledge, motive, and identity as to Count Two.  Mot. at 24–26;
Reply at 20.

Defendant argues that none of the proffered evidence is admissible because it is "the very
definition of propensity evidence."  Opp'n at 18.  Defendant also argues that the government
cannot introduce the proffered evidence unless or until defendant puts his identity at issue.  Id.
Further, defendant maintains that the probative value of the photographs is substantially
outweighed by the danger of unfair prejudice and is overly cumulative.  Id. at 21.

The Court concludes that the proffered evidence is admissible.  Because the photos of the
girls' legs and feet do not constitute any crime for which defendant has been charged,
defendant's argument that the evidence is "propensity" evidence to commit the charged crimes
must be rejected.  Rather, the evidence is probative of defendant's sexual interest in little girls,
which bears on his intent, motive, knowledge , and planning to commit the charged crimes of
traveling in foreign commerce with the intent to commit illicit sexual conduct with a minor, and
his alleged commission of those sexual acts.  See United States v. Curtin, 489 F.3d 935, 950–51
(9th Cir. 2007) (concluding that when intent is at issue, as it is in Count One here, "[e]xtrinsic
acts evidence may be critical" to "draw[] inferences from conduct" in order to establish
defendant's intent) (quoting Huddleson v. United States, 485 U.S. 681, 685 (1988)); United
States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) (upholding admissibility of child
pornography as relevant to the issue of whether Brand traveled across state lines to meet the
purported 13-year-old with the intent to engage in illicit sexual activity, as opposed to for an
innocuous purpose).  Further, the sheer volume of files recovered is probative of defendant's
knowledge and to rebut any assertion that defendant does not have an interest in little girls
and/or is not the alleged perpetrator.  See United States v. Payne, 341 F.3d 393, 403 (5th Cir.
2003) (concluding that the number of images in defendant's possession taken together
established defendant's knowledge).

Defendant's argument that the photographs are not relevant fails to consider that the
photographs are probative of defendant's "abnormal sexual attraction to children," which is
further evidence of his intent and purpose of engaging in illicit sexual acts when he traveled to
Cambodia.  Brand, 467 F.3d at 198 ("We believe this abnormal sexual attraction in children
establishes the similarity or connection required to show relevance.").  Further, defendant's
argument that the government cannot introduce this evidence until he puts his intent at issue is
wrong for two reasons: first, Count One is a specific intent crime, see United States v. Gracidas-
Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000), and second, "federal courts repeatedly have held
that the government may offer evidence in its case-in-chief in anticipation of an expected aspect
of the defense."  Curtin, 489 F.3d at 940.  Finally, the proffered evidence is not too remote in
time, and defendant does not contend otherwise.  Accordingly, the evidence is admissible unless

its probative value is substantially outweighed by the danger of "*unfair* prejudice." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982) (emphasis in original).

The Court concludes that the evidence is not unfairly prejudicial. Unfair prejudice is prejudice stemming from the non-probative aspects of the evidence that provokes an emotional response in the jury that causes the jury to consider it for something other than its bearing on a material fact. Id. The proffered photographs are not pornographic in nature and, thus, are no more prejudicial than the charged conduct. Evidence of defendant's intent, purpose, or knowledge "is not rendered inadmissible because it is of a highly prejudicial nature[:] The best evidence often is." United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977) (internal quotation marks and citation omitted). Further, the government's choice to select a small sample of the thousands of photographs retrieved from defendant's digital media is not unfairly prejudicial. See United States v. Ganoe, 538 F.3d 1117, 1124 (9th Cir. 2008) (district court did not abuse its discretion in admitting 10 child pornography images out of 72); United States v. Hay, 231 F.3d 630, 639 (9th Cir. 2000) (allowing jury to view 3 out of 34 exhibits was not unduly prejudicial); see also United States v. Morales-Aldahondo, 524 F.3d 115, 119–20 (1st Cir. 2008) (limiting publication of 12 out of 100 still images and ten out of 18 video clips satisfied Rule 403); United States v. Dodds, 347 F.3d 893, 899 (11th Cir. 2003)(no abuse of discretion where trial court admitted 66 of 3,400 child pornography images). A limiting instruction will also help cure any prejudice that may arise from admitting the evidence. United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) ("[W]e must presume that juries will follow the district court's limiting instructions."). Accordingly, the 15 proffered presentations are admissible.

### 3.    Child Pornography Videos

The government seeks to introduce two of the approximately 20 child pornography videos seized from defendant's digital media. The first video depicts two naked prepubescent girls of Southeast Asian descent (and one clothed post-pubescent female) gather in a room and watch a third prepubescent girl orally copulate a naked adult white male. The second video depicts a compilation of girls orally copulating adult males or adult males masturbating while the ejaculate is sprayed onto the face and into the mouths of the girls. See Gov't Notice of Lodging dated July 12, 2012 (CD containing copies of proffered pornographic videos). According to the government, the two videos are "highly relevant to defendant's motive and intent to commit the charged offenses" because they "demonstrate both his abnormal sexual interest in young girls and in the particular sex acts he desired to engage in with them." Mot. at 26. In particular, the evidence is "probative of defendant's intent to have young girls orally copulate him until he ejaculates, and to be observed engaging in these sex acts by other minor girls." Id.

Defendant, in opposition, asserts that the government "does not explain how the presence of child pornography videos in unallocated space of a digital media device shows a defendant's motive to travel with the purpose of engaging in illicit sex or the commission of illicit sex with S.L." Opp'n at 14 n.9. Further, defendant argues that child pornography videos are "abhorrent" and "disgusting and highly inflammatory," thus warranting exclusion under Rule 403. Id. at 21 (quoting United States v. Stall, 581 F.3d 276, 288 (6th Cir. 2009) and United States v. Polizzi, 257 F.,R.D. 33, 37 (E.D.N.Y. 2009)).

The child pornography videos, while abhorrent, are nevertheless relevant and probative of defendant's intent, purpose, and plan to travel in foreign commerce with the intent to engage in illicit sexual conduct with a minor and the carrying out of those intentions. See Brand, 467 F.3d at 198 (holding that "a direct connection exists between child pornography and pedophilia," and that "the same urge that [defendant] satisfied by obtaining child erotica also inclined [defendant] to commit sexual crimes against children.").

There is no question that the videos pose a serious risk of prejudicing defendant; however, the probative value they offer—namely, that defendant used them to "whet [his] own sexual appetite," see Brand, 467 F.3d at 198—is highly probative of defendant's intent to engage in illicit sexual conduct with a minor because "child pornography may induce viewers to commit sex crimes on children." United States v. Byrd, 31 F.3d 1329, 1336 n.9 (5th Cir. 1994) (citing David B. Johnson, *Why the Possession of Computer-Generated Child Pornography Can Be Constitutionally Prohibited*, 4 ALB.L.J.SCI. & TECH. 311, 326 & n. 141 (1994) (citing 1 U.S. Dep't of Justice, Attorney General's Commission on Pornography: Final Report 649–50 (1986))). Accordingly, the probative value is not "substantially outweighed by the danger of *unfair* prejudice." Bailleaux, 685 F.2d at 1111 (emphasis in original). The two child pornography videos are therefore admissible.

In accordance with the foregoing, the government's motion *in limine* is GRANTED.[17]

---

[17] Although the government's motion *in limine* is granted, the Court will impose limits on the number of pictures the government may introduce and the amount of the child pornography videos the government may show. The Court will discuss what specific limitations are appropriate at the final status conference before trial.

**CRIMINAL MINUTES - GENERAL**

## IV.    CONCLUSION

Defendant's motions to exclude evidence of prior sexual acts and to sever Counts One and Two are DENIED.  Defendant's motion to dismiss Count Three on equal protection grounds is not ripe for adjudication and therefore DENIED as moot subject to renewal post-trial.

The government's motion *in limine* is GRANTED.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |